**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

CYNTHIA AUSTIN                                  CIVIL ACTION NO. 17-1625

VERSUS                                          JUDGE S. MAURICE HICKS, JR.

INDUSTRIAL OILS                                 MAGISTRATE JUDGE HAYES
UNLIMITED, L.L.C., ET AL.

**MEMORANDUM RULING**

Before the Court are: (1) a Motion for Summary Judgment filed by Defendants and

Counter-claimants Industrial Oils, LLC and KFM Enterprises LLC (collectively

"Defendants") (Record Document 45); (2) a Motion for Summary Judgment filed by

Plaintiff and Counter-defendant Cynthia Austin ("Plaintiff" or "Austin") (Record Document

52); and (3) Defendants' Motion to Strike the affidavit of Cynthia Austin (Record

Document 57). For the following reasons, Defendants' Motion for Summary Judgment is

hereby **GRANTED**, Plaintiff's Motion for Summary Judgment is hereby **DENIED**, and

Defendants' Motion to Strike is hereby **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This matter centers around the validity of a non-competition/non-solicitation

agreement. See Record Document 45-3 at 6; see also Record Document 51 at 13. In

January 1999, Austin was hired by Industrial Oils as a sales representative responsible

for selling oil products, such as industrial lubricants, hydraulic oil, and motor oil. See

Record Document 45-2 at 1. In August 2011, Austin signed a Business Protection,

Confidentiality, and Non-Solicitation Agreement (hereinafter the "Agreement"). See

Record Document 51-2. The Agreement included a confidentiality provision, a non-

solicitation provision, and an assignment provision. <u>See id.</u> The Agreement was never

signed by Industrial Oils. <u>See id.</u>

The confidentiality provision provides, in pertinent part:

> **Non-Disclosure of Confidential Information.** Employee recognizes and acknowledges that while employed by the Company, he/she will have access to, be provided with, prepare, and/or create certain confidential and proprietary business information and trade secrets for the Company ("Confidential Information"). Confidential Information include, but is not limited to, any information related to the Company's business; products; services; pricing; designs; bids, bid documents, packages, formulas and processes; the names, lists, and agreements with customers and prospective customers and/or employees and prospective employees; pay and compensation; costs; business structure and organization; suppliers; vendors; pricing books and information; computer programs and software; accounting techniques, records and procedures; operating and other cost data; and other records of the Company identified as confidential and proprietary business information or trade secrets, all of which are of substantial value to the Company and its business. This section applies to records, documents and information of the Company in any form including computer hardware, software, and other electronic media, and tape recordings of any kind.

> Employee agrees not to use or disclose the Company's Confidential Information for his/her own benefit, or for the benefit of anyone other than the Company at any time during or after his/her employment with the Company without the Company's express prior written consent. Employee agrees that all written and electronic media, in whatever form whatsoever . . . will at all times belong to and remain the exclusive property of the Company. . . .

<u>See id.</u> at ¶ 3.

The non-solicitation provision of the Agreement provides:

> **Covenant Not to Solicit Customers.** In exchange for the consideration outlined herein, and so as to facilitate the enforcement of Employee's agreement not to use or disclose Confidential Information, Employee agrees as follows:

a. Employee covenants and agrees that he/she will not, directly or indirectly, call upon, contact or communicate with, solicit, contract with, or enter into any agreement with, divert or attract, or attempt to do so, or do or accept business with any current or former customer, client or prospect of the

Company or any of the Company's parent, subsidiary, affiliated, or otherwise related entities.

b. The restrictions of this Paragraph 5 are effective within the specified parishes/counties listed in Exhibit A to this Agreement (which are parishes/counties where the Company actually carries on or performs business, work, or services, and/or solicits clients, customers, prospective clients, or prospective customers) and are effective within each of the specified parishes/counties for a period of two (2) years from the ending of Employee's employment with the Company (for any reason whatsoever) or as long as the Company actually carries on or solicits business in any such parish/county, whichever is shorter.

c. Employee agrees and acknowledges that the covenant not to solicit contained in this Paragraph 5 protects legitimate business interests of the Company. Employee further acknowledges the reasonableness of the covenant not to solicit and the reasonableness of the geographical areas and the duration of time which are part of said covenant. Employee further acknowledges that any hardship imposed on him/her by this covenant is not an undue hardship and is outweighed by the necessity of and the protections provided by the covenant not to solicit.

d. This covenant shall survive the end of Employee's employment with the Company.

See id. at ¶ 5.

The assignment provision states:

**Related Entities & Assignment.** Employee expressly acknowledges that the restrictive covenants contained herein operate to protect [Industrial Oils] as well as any parent, subsidiary, affiliated, or otherwise related entity including, but not limited to, Oils Unlimited, Industrial Oils Unlimited, and Adjuvants Unlimited. Employee expressly acknowledges that the restrictive covenants contained herein are made for the benefit of and may be enforced by any such related entity. The Company may assign its rights under this Agreement at any time.

See id. at ¶ 6.

Finally, the Agreement provides a provision for attorney's fees and costs, which

states, in pertinent part:

**Injunctive Relief, Reformation, Severability & General Provisions.** Employee acknowledges that the remedy at law for money

damages for any breach by him/her of this Agreement will be inadequate, and that the Company shall also be entitled to injunctive relief (without a showing of irreparable harm), as well as reimbursement of expenses, including attorney's fees, incurred in either enforcing this Agreement or pursuing a remedy for Employee's breach of this Agreement. . .

See id. at ¶ 7.

In January 2016, Industrial Oils became a wholly owned subsidiary of KFM Enterprises, LLC ("KFM"). See Record Document 45-2 at 5. Under KFM, Austin was designated first as a Business Development Representative and then as an Account Representative. See Record Document 45-5 (Austin's Deposition) at 9–10. The parties dispute whether Austin's responsibilities changed following this transition. See id. at 11–12; see also Record Document 51-1 at 2. Defendants assert Austin's responsibilities did not change. See Record Document 45-2 at 5. However, Austin contends her job description and pay structure did change. See Record Document 51-1 at 2.

Following the transition to KFM, Austin signed an Employee Acknowledgement Form in which she acknowledged that although she became an employee of KFM, she would "remain bound by all policies and procedures of [her] previous employer, [Industrial Oils], which [were] adopted in full by" KFM. Record Document 51-3. In December 2016 Austin was terminated from her position by KFM and offered a severance package which she did not accept. See Record Document 51-4; see also Record Document 45-2 at 10.

Following her termination, Austin was employed by Tulstar Products, Inc. ("Tulstar"). See Record Document 45-2 at 10; see also Record Document 51-5. At Tulstar, Austin was charged with bringing in new business and customers. See Record Document 45-2 at 10. On March 16, 2017, KFM sent Austin a cease and desist letter asserting she was in violation of the Agreement. See Record Document 51-7; see also Record

Document 45-2 at 15–16. Following receipt and notification of this letter, Tulstar terminated Austin's employment. See Record Document 51-6.

Austin filed this suit against Industrial Oils and KFM on November 9, 2017, in the First Judicial District Court, Caddo Parish, Louisiana. See Document 1-2 (Complaint); see also Record Document 18 (Amended Complaint). The complaint sought to invalidate the Agreement. See id. On December 14, 2017, Defendants removed the case to this Court. See Record Document 1. Following removal, Industrial Oils and KFM filed a counterclaim asserting that Austin's actions violated the Agreement. See Record Document 5.

In August 2019, Defendants filed the instant motion for summary judgment seeking the Court to declare the Agreement valid and enforceable. See Record Document 45. Further, Defendants moved for partial summary judgment finding that Austin breached the Agreement and that Defendants are owed costs and attorney's fees. See id. Austin filed an opposition. See Record Document 51. Defendants filed a reply. See Record Document 56.

In September 2019, Austin filed the instant cross-motion for summary judgment seeking the Court to declare the Agreement null and void. See Record Document 52. In support of this motion, Austin refers the Court to her opposition to Defendants' motion for summary judgment. See Record Document 52-1. Further, Defendants' opposition incorporates its motion for summary judgment. See Record Document 59. As both motions for summary judgment seek to determine the validity of the Agreement, this Court will analyze these motions together.

Defendants also filed the instant motion to strike Austin's affidavit, which was used extensively in Austin's opposition to Defendants' motion for summary judgment. See

Record Document 57. Defendants assert statements made in the affidavit either fail to create a genuine issue of material fact or are inadmissible as improper summary judgment evidence. See id. at 3. Austin filed an opposition. See Record Document 65. All issues have been fully briefed and are ripe for review by this Court.

**LAW AND ANALYSIS**

### I.   Motion to Strike

Although Defendants' Motion to Strike was filed after both parties' motions for summary judgment, the Court will address it first because it pertains to what evidence the Court may properly consider when ruling on these motions.

### A.  Legal Standard

Federal Rule of Civil Procedure 12(f) permits the court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Cambridge Toxicology Group , Inc. v. Exnicios, 495 F.3d 169, 178 (5th Cir. 2007). Rule 12(f) motions to strike have long been disfavored by courts, and a grant of such a motion is to be used "sparingly." Augustus v. Bd. Of Pub. Instruction of Escambia Cty., Fla., 306 F.2d 862, 868 (5th Cir. 1962); see also Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953) ("Motion[s] to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.").

### B.  Application

In the instant motion, Defendants move to strike Austin's affidavit, which is primarily offered as evidence to defend against their summary judgment motion. See Record Document 57-1. In a line-by-line analysis, Defendants specifically argue that virtually all of Austin's statements should be stricken because they are either (1) not based

on Austin's personal knowledge, (2) fail to create genuine issues of material fact, or (3) contradict her sworn deposition testimony. See id.

While the denial of summary judgment must be based on facts that would be admissible in evidence, the non-moving party need not produce evidence in a form that would be admissible at trial to avoid summary judgment. See Celotex Corp v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). Thus, while many of Austin's statements may be inadmissible because they are not based on personal knowledge, the inclusion of these statements in her affidavit does not warrant striking them. Defendants' two additional arguments are related, in that Defendants argue Austin's contradictions create a "sham" affidavit, which cannot be used to create genuine issues of material fact. The case law cited by Defendants establishes that an affidavit may be labeled as a "sham" when it attempts to thwart the purposes of Rule 56 by purposefully manufacturing genuine issues of material fact by offering direct, conflicting evidence between a sworn deposition and an affidavit. See Doe ex rel. Doe v. Dallas Independent School Dist., 220 F.3d 380, 386 (5th Cir. 2000). Austin's affidavit, as opposed to the "shams" cited to by Defendants, does not seek to invent disputing evidence to survive a Rule 56 motion. Rather, Austin's affidavit serves to elaborate on several of her deposition answers, and the disputed statements do not directly contradict what she stated in her deposition.

As such, Defendants' motion to strike Austin's affidavit answers as summary judgment materials is **DENIED**. The Court will utilize the Austin affidavit and additional discovery evidence in analyzing both parties' motions for summary judgment.

## II.      Motions for Summary Judgment

### A.  Legal Standards

#### i.    Rule 56 Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Geoscan, Inc. of Texas v. Geotrace Techs., Inc., 226 F.3d 387, 390 (5th Cir. 2000). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004).

In reviewing a motion for summary judgment, the court must view "all facts and inferences in the light most favorable to the non-moving party." Rogers v. Bromac Title Servs., L.L.C., 755 F.3d 347, 350 (5th Cir. 2014). But the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a 'scintilla of evidence.'" Hathaway v. Bazanay, 507 F.3d 312, 319 (5th Cir. 2007) (internal citations omitted). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

#### ii.      Louisiana Revised Statute 23:921

"Louisiana has long had a strong public policy disfavoring noncompetition agreements between employers and employees." SWAT 24 Shreveport Bossier, Inc. v.

Bond, 2000-1695, p. 4 (La. 2001); 808 So. 2d 294, 298. This public policy is clearly expressed in Louisiana Revised Statute 23:921(A)(1), which provides:

> Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.

The exception at issue in the instant case is provided in Subsection (C), which states:

> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

La. R.S. 23:921(C).

Thus, to be valid, "a non-competition agreement may limit competition only in a business similar to that of the employer, in a specified geographic area, and for up to two years from termination of employment." Cellular One, Inc. v. Boyd, 94-1783, 94-1784, p. 5 (La. App. 1 Cir. 3/3/95); 653 So. 2d 30, 33.

A non-competition agreement is a contract between the parties; therefore, it should be construed according to the general rules of interpretations of contracts found in the Louisiana Civil Code. See Bond, 808 So. 2d at 307. Additionally, public policy dictates that non-competition agreements are to be strictly construed in favor of the employee. See Cellular One, Inc., 653 So. 2d at 33.

### B. Validity and Enforceability of the Agreement

#### i.    Parties' Arguments

Defendants contend the Agreement is valid and enforceable because it meets all the requirements set forth in La. R.S. 23:921. See Record Document 45-3. Specifically, Defendants assert "in exchange for continued employment, Austin agreed not to solicit Industrial Oils' customers or those of its related entities, including KFM for a period of two (2) years following termination of her employment with Industrial Oils/KFM within a designated geographic area identified by county or parish where Industrial Oils/KFM did business." Id. at 6.

In her opposition, Austin provides numerous reasons why the Agreement is null and void. These reasons can be divided into two categories: (1) the validity of the Agreement as a whole and (2) the validity of the assignment provision. See Record Document 51.

As to the validity of the Agreement, Plaintiff contends it is invalid because Industrial Oils never signed it. See id. at 20. Plaintiff then contends paragraph three—the non-disclosure provision—is invalid because there are no geographical or time limitations. See id. at 22–23. Plaintiff next asserts the Agreement is invalid because it is overly broad and ambiguous. See id. at 23–29. Specifically, Plaintiff asserts paragraph five—the non-solicitation provision—is invalid because the time and geographical limitations only apply to Industrial Oils and not to its parent, subsidiary, or otherwise related entities. See id. at 24. Plaintiff also contends that Defendants failure to provide a specific definition of their business renders the Agreement unenforceable because it restricts Plaintiff from participating in any type of oil sales. See id. at 28.

As to the validity of the assignment provision, Plaintiff asserts "non-competition agreements are generally not assignable in Louisiana because such agreements may only be between the then-current employer and employee." See id. at 24. Plaintiff also contends it is too broad because it has no restrictions on who the Agreement may be assigned to by the company. Id. Finally, Plaintiff contends that even if the Agreement was assignable, she only acknowledged the "policies and procedures" of her former employer, which did not include a non-solicitation agreement with her former employer. Id. at 21.

Furthermore, Plaintiff contends even if the Agreement is valid, it was breached by Defendants because one of the considerations of the Agreement was that she remain at her position as a sales representative at her then-existing pay structure. See id. at 22.

In its reply, Defendants contends the Agreement is valid because a specific definition of the employer's business is not required under La. R.S. 23:921. See Record Document 56 at 1–3. Defendants also assert Industrial Oils' signature was not required because Austin's continued employment indicated her consent. See id. at 3–4. As to the non-disclosure provision, Defendants assert it is not subject to the requirements set forth in La. R.S. 23:921; thus, it is valid and enforceable. See id. at 8–9. As it pertains to the assignment provision, Defendants assert KFM, the parent corporation of Industrial Oils, was properly contemplated as a party to the Agreement. See id. at 4–8. The Court will analyze the form and each provision of the Agreement in turn.

###        ii.    Form

The end of the Agreement includes a signature line for Defendants and the employee. See Record Document 51-2. Austin mistakenly signed on the line dedicated for Defendants. See id. Defendants never signed the agreement. See id. Thus, Austin

contends the Agreement is invalid. See Record Document 51 at 18–20. Specifically, Austin asserts "Louisiana Civil Code Article 1927 and 1947 states that when the parties prepare a document requiring the execution of each party by their signatures; the parties must sign and execute the agreement in order to have a valid contract." Id. at 18.

Defendants contend, however, "that Article 1947 merely creates a presumption that can, and was, rebutted by the conduct of the parties when Austin continued to remain employed by Industrial Oils and KFM." Record Document 56 at 3. Furthermore, Defendants note that La. R.S. 23:921 does not proscribe a certain formality for non-solicitation agreements. See id.; see also Litig. Reprographies & Support Servs., Inc. v. Scott, 599 So. 2d 922, 924 (La. App. 4 Cir. 1992) ("The statute [R.S. 23:921] does not require that a non-competition agreement be dated or even be written to be valid. It merely states that an "employee" may make such an agreement with his 'employer.'")

"A contract is formed by consent of the parties through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing or by action or inaction that under the circumstances clearly indicates consent." La. Civ. Code art. 1927. "When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form." La. Civ. Code art. 1947. This presumption may be rebutted by subsequent performance by the parties. See Enterprise Property Grocery, Inc. v. Selma, Inc., 38,747 (La. App. 2 Cir. 9/22/04); 882 So. 2d 652; see also Dickerson v. Cajun Commc'n of Texas, Inc., 40,026 (La. App. 2 Cir. 8/17/05); 910 So. 2d 477.

In <u>Selma</u>, the court found a valid lease existed between the parties although the lease was not signed by one of the parties. <u>See id.</u> The court reasoned that the parties conduct—namely, the lessee paying rent and the lessor accepting rent payments—rebutted article 1947's presumption. <u>See id.</u> at 656. Thus, the court concluded the lease was enforceable. <u>See id.</u> Here, the parties' conduct following the execution of the document rebuts article 1947's presumption and indicates both parties intended to be bound by the Agreement. Specifically, Austin remained employed by Industrial Oils as a Sales Representative until December 2015. <u>See</u> Record Document 45-2. Once Industrial Oils became a wholly owned subsidiary of KFM, Austin continued employment as a Business Development Representative and then later as an Account Representative.[1] <u>See</u> Record Document 45-5 at 9. In exchange for her continued employment, Industrial Oils and KFM compensated Austin. Thus, any presumption that Defendants needed to sign the Agreement to be bound was rebutted by both parties' subsequent performance. As such, Plaintiff's arguments as to the form of the Agreement are without merit.

### iii.   Non-Disclosure Provision

Paragraph three of the Agreement includes a non-disclosure provision. Non-disclosure and confidentiality provisions are not subject to the requirements of La. R.S. 23:921. <u>See</u> <u>NovelAire Technologies, LLC v. Harrison</u>, 2009-1372 (La. App. 4 Cir. 10/13/10); 50 So. 3d 913, 918–919. Plaintiff asserts, however, that the Agreement's confidentiality provision is so embedded as to render it a non-competition agreement

---

[1] Austin asserts that one of the conditions of the Agreement was that she remain designated as a "Sales Representative at her then existing pay structure." Record Document 51 at 22. Thus, Austin asserts the Agreement "stopped to exist" because her position changed following Industrial Oil becoming a wholly owned subsidiary of KFM. <u>Id.</u> As this argument goes to the validity of the Assignment Provision, it will be discussed more fully below.

subject to La. R.S. 23:921. <u>See</u> Record Document 51 at 23. As such, Plaintiff contends the failure to include a geographic and time limitation to the provision renders it invalid. <u>See id.</u> In support of this assertion, Plaintiff cites an unpublished decision from the Eastern District of Louisiana—<u>O'Sullivan v. Sunil Gupta, M.D., LLC</u>, No. 17-609, 2017 WL 3438349 (E.D. La. Aug. 10, 2017). There the court found a provision that prevented the employee from "accept[ing] or engag[ing] in any business activity that requires him to use or reveal any confidential business information," to be within the purview of § 23:921. <u>Id.</u> at *4. The O'Sullivan court found, "the restraint on revealing confidential information is nested within a restraint on O'Sullivan's ability to exercise 'a lawful profession, trade, or business'—the hallmark of a covenant not to compete that is subject to § 23:921." <u>Id.</u> at *5.

The <u>O'Sullivan</u> confidentiality provision is clearly distinguishable from the one in the instant matter. Here, the confidentiality provision contains no language preventing an employee from exercising "a lawful profession, trade, or business." La. R.S. 23:921(A). Nor is the provision nested within the non-solicitation provision. Rather, the provision serves solely to protect the employer's confidential information. Thus, the provision is not subject to the requirements of § 921. As such, Plaintiff's arguments are without merit and the confidentiality provision is valid.

### iv.   Non-Solicitation Provision

Paragraph five of the Agreement provides a non-solicitation provision. On its face, the non-solicitation provision meets the requirements of La. R.S. 23:921. Namely, the provision is limited to a specified geographic area and the provision expires two years from termination of employment. <u>See</u> Record Document 51-2. However, Plaintiff asserts

the provision is invalid because it fails to define Defendants' business. See Record Document 51 at 26–29. Defendants contend that a specific definition of their business is not required under § 921. See Record Document 56 at 1–3. The Court agrees with Defendants and finds a specific definition of the business is not required under § 921.

The jurisprudence makes clear that § 921 does not require a non-competition agreement to define the employer's business. See Baton Rouge Computer Sales v. Miller-Conrad, No. 99-1200, p. 3 (La. App. 1 Cir. 5/23/2000); 767 So. 2d 763, 764; see also Henderson Implement Co., Inc. v. Langley, 97-1197, p. 6 (La. 3rd Cir. 2/4/98); 707 So. 2d 482, 486. Plaintiff asserts the case law is inconsistent and determining whether a definition of a business is required in a non-competition agreement is a fact-based inquiry. See Record Document 51 at 26. However, in all the cases where an agreement was found invalid based on the definition of the employer's business, it is because there was already a definition of the business—either in the agreement itself or in subsequent documents— and that definition was found to be too broad. See Paradigm Health System, LLC v. Faust, 2016-1276, p. 7 (La. App. 1 Cir. 4/12/17); 218 So. 3d 1068, 1073; see also Lafourche Speech & Language Servs., Inc. v. Juckett, 94-1809 (La. App. 1 Cir. 3/3/95); 652 So. 2d 679. Here, the agreement contains no such definition of the employer's business. See Record Document 51-2.

The instant case is more comparable to Baton Rouge Computer Sales, where the court upheld the validity of a non-competition agreement that did not define the employer's business. See 767 So. 2d 763. In reaching this conclusion, the court found there was no evidence indicating the employer engaged in anything other than computer sales, as evidenced by the business' name. See id. at 765. The court continued, "[w]hile

the type of computer systems sold may be diverse, the business of selling them is not an activity subject to various descriptions or definitions." Id. Furthermore, the court concluded the employee "knew exactly what type of business she was agreeing not to engage in when she signed the non-competition agreement." Id.

Here, Austin was employed with the Defendants for nearly 18 years. See Record Document 45-2. At the time she signed the Agreement, Austin had been employed with Industrial Oils for 12 years. See id. at 1. Thus, there can be no doubt that Austin knew the type of business Defendants engaged in when she signed the Agreement. Furthermore, just as the court in Baton Rouge Computer Sales, this Court will not delve into the minutiae of different oils available for sale. Although the types of oil may be diverse, "the business of selling them is not an activity subject to various descriptions or definitions." Baton Rouge Computer Sales, Inc., 767 So. 2d at 765. Therefore, as § 921 does not require the definition of the employer's business and Austin had the requisite knowledge of the employer's business, this argument is without merit.

Plaintiff next asserts the non-solicitation provision is invalid because it is overly broad and ambiguous. See Record Document 51 at 24. More specifically, Plaintiff contends the geographical and time limitations in the non-solicitation provision, paragraph 5(b), only apply to "the Company [Industrial Oils]" and not to "the Company's parent, subsidiary, affiliated, or otherwise related entities." Id. Plaintiff compares this to paragraph 5(a) of the non-solicitation provision which specifically extends the non-solicitation mandate to "the Company or any of the Company's parent, subsidiary, affiliated, or otherwise related entities." Record Document 51-2. Plaintiff does not cite to any case law supporting this contention.

Focusing solely on the validity of the non-solicitation provision, the Court finds this argument without merit. The case law is clear that each provision of non-competition agreements must comply with La. R.S. 23:921. See Vartech Systems, Inc. v. Hayden, 2005-2499, p. 14 (La. App. 1 Cir. 2006); 951 So. 2d 247, 260. Here, the non-solicitation provision meets all the requirements of La. R.S. 23:921. Specifically, it is limited to a specified geographic area and expires after a term of two years. As to Plaintiff's argument that the geographic limitation does not extend to the Company's subsidiary or affiliates, this is more properly addressed below in the discussion of the validity of the assignment provision. Thus, the Court finds the non-solicitation provision valid as to Industrial Oils and will next discuss the applicability of the Agreement to KFM.

### v.   **Assignment Provision**

Paragraph six of the Agreement provides it extends "to protect the Company as well as any parent, subsidiary, affiliated, or otherwise related entity including, but not limited to Oils Unlimited, Industrial Oils Unlimited, and Adjuvants Unlimited…The Company may assign its rights under this Agreement at any time." Record Document 51-2 at 2. Plaintiff contends the provision is overly broad and ambiguous because it "places no restrictions or limitations whatsoever on who the [Agreement] may be assigned to by the Company." Record Document 51 at 24. Additionally, Plaintiff contends this subverts the purpose of the limitations set forth in 23:921(C); namely, preventing her from understanding the scope of the agreement before signing it. See id. at 25. Furthermore, Plaintiff asserts she was given a different job with different pay structures when Industrial Oils became a wholly owned subsidiary of KFM. See id. at 25–26. Thus, she contends

she would not have signed the Agreement had she known "her income would be significantly reduced and her job would no longer exist…" Id. at 26.

In response, Defendants contend KFM was properly contemplated as a party to the Agreement because KFM was a parent corporation of Industrial Oils. See Record Document 56 at 5. Further, Defendants assert Austin's change in position and pay was not related to the creation of KFM as the holding company for Industrial Oils. See id. at 7.

The Court agrees with Defendants. The Civil Code provides that "[r]ights and obligations arising from a contract are heritable and assignable unless the law, the terms of the contract or its nature preclude such effects." Civ. Code art. 1984. Thus, the Agreement is presumed heritable. The Court can find no statute or law that provides an employment agreement is not heritable in Louisiana. Additionally, nowhere in the Agreement does it indicate the contract was meant to be personal between Austin and Industrial Oils. Rather, the Agreement indicates the opposite by allowing Industrial Oils to "assign its rights under this Agreement at any time." Record Document 51-2 at 2.

Furthermore, the case law demonstrates non-competition agreements can be assignable under Louisiana law. See e.g., Louisiana Office Systems, Inc. v. Boudreux, 298 So. 2d 341 (La. App. 3rd Cir. 1974). Jeansonne v. El Hindy, a case cited by Plaintiff in support of her proposition that non-solicitation agreements are generally not assignable in Louisiana, can be easily distinguished from the current case. In Jeansonne, the court found a non-competition agreement between a vendor and purchaser was personal and not transferrable to a third party. See 413 So. 2d 999 (La. App. 4 Cir. 1982). The Court found the agreement's personal nature was an exception to the general rule because there was language indicating the agreement was for the benefit of the named obligee

only. <u>See id.</u> at 1000. Here, there is no language indicating this Agreement is specifically for the benefit of Industrial Oils. Rather, Defendants went to great lengths to ensure the Agreement followed the general rule and remained assignable.

As to Austin's contention that a change in position following assignment invalidated the agreement, the Court again agrees with Defendants. Austin contends one of the considerations of the Agreement was that she remain employed as a Sales Representative at her existing pay structure. <u>See</u> Record Document 51 at 22. However, the Agreement specifically sets forth the consideration as follows, "In exchange for his/her services, and in exchange for his/her agreements herein, Employee will be compensated in accordance with the Company's compensation and/or commission plan then in effect for Employee's position or according to terms otherwise agreed upon in writing." Record Document 51-2 at 1. Further, regarding employment the Agreement explains, "[e]mployee will be employed by the Company in the position of Sales Representative and shall perform such duties as the Company may from time to time direct." <u>Id.</u> Thus, there was no guarantee of a certain position or salary by signing the Agreement, and Austin's argument is without merit.

The Agreement follows the general rule set forth in the Civil Code and is assignable. <u>See</u> Civ. Code art. 1984. There is no indication from the Agreement, the law, or otherwise indicating an exception applies. Thus, this Agreement is assignable and was properly assigned to KFM.

### C.  Breach of the Non-Solicitation Agreement

Having established the Agreement's validity under Louisiana law, the Court must now determine whether Austin breached the Agreement. Defendants contend that while at Tulstar, Austin had impermissible contact with multiple former Industrial Oil/KFM customers and sold products to four Industrial Oil/KFM customers, thus breaching the express terms of the non-solicitation provision of the Agreement. See Record Document 45-3 at 16–17. To support a finding of breach, Defendants include Austin's deposition (Record Document 45-5), Industrial Oil/KFM customer lists (Record Document 45-10), deposition testimony from Industrial Oil/KFM executives (Record Document 45-6, 45-9 & 45-11), and numerous emails and price quotes from Austin to prospective customers while employed at Tulstar (Record Document 45-12). Austin counters with her own affidavit, addressing the extent of her interactions with these various Industrial Oil/KFM customers.  See Record Document 51-1. Based on these summary judgment materials, examined in the light most favorable to the non-movant, it is clear Austin has violated the express terms of the Agreement numerous times and Defendants are entitled to judgment as a matter of law on the issue of breach.

Defendants' Statement of Undisputed Material Facts alleges a total of fifteen instances of contact or sale to their customers by Austin that violate the express terms of the Agreement. See Record Document 45-2 ¶39-53. The Court divides and examines these instances based on whether the alleged breach was a sale or improper contact.

### i.    Sales to Industrial Oil/KFM Customers

Defendants allege Austin breached the express terms of the Agreement in selling products while employed by Tulstar to four of its customers. See Record Document 45-

2. These customers include: Courtney Construction (¶40), King Tool Company (¶45), Longview Asphalt (¶47), and Vermeer MidSouth (¶53). See id. In support of these allegations, Defendants cite to Austin's Deposition, Austin's Affidavit, and documents provided by Tulstar. See id.

Austin responds to each of these specific charges in her Affidavit. See Record Document 51-8. Austin admits that she sold Courtney Construction grease after they contacted her "because they were not being serviced properly by Industrial Oils." Id. at 7. Austin states King Tool Company contacted her, but does not state whether she sold them any products. See id. However, Defendants produce several sales receipts to King Tool with Austin listed as the sales representative. See Record Document 45-12. Austin admits that after Longview Asphalt/Madden Contracting[2] contacted her "telling her they were taking their oil products out for bid," she sold them Heat Transfer in totes. Record Document 51-8 at 8. Finally, Austin admits to selling Vermeer MidSouth pails of hydraulic oil after the company reached out to her. See id.

The terms of the non-solicitation provision of the Agreement prohibit the sales made by Austin. Austin's sales violate Section (a) of the Covenant Not to Solicit Customers, which provides that she could not "contract with, or enter into any agreement with… or do or accept business with any current or former customer, client or prospect of the Company." Record Document 51-2 at ¶5. Based on the evidence produced, no genuine dispute of material fact as to whether Plaintiff's sales breached the terms of the Agreement exists, and Defendants are entitled to judgment as a matter of law. A

---

[2] Austin states that Madden Contracting owns Longview Asphalt, although Defendants separate the two companies in alleging improper conduct towards both. See Record Document 51-8 at 8.

determination of the appropriate amount of damages stemming from this breach shall be an issue resolved by the trier of fact.

### ii.      Contact with Industrial Oil/KFM Customers

Defendants also allege Austin had impermissible contact with eleven of its customers while employed by Tulstar. See Record Document 45-2. These companies include: Branton Tools Machine Shop (¶39); DCG Machine, Inc. (¶41); F-S Prestress (¶42); Globe Energy Services, LLC (¶43); Harris Pottery (¶44); Lewis Engineering Co. (¶46); Madden Contractors (¶48); Railway Equipment Service, Inc. (¶49); Red River Pump Specialists (¶50); RedZone Coil Tubing (¶51); and Texas Scrap & Salvage (¶52). See id. Once again, Defendants cite to Austin's Deposition, Austin's Affidavit, and documents provided by Tulstar. See id.

Austin's Affidavit responds to each of these allegations in turn. See Record Document 51-8. Austin states that Branton Tools contacted her to ask whether she was still at Industrial Oils and if she could get them oil. See id. at 7. Defendants produce an email receipt between Austin and Branton Tools for the sale of one pail of oil. See Record Document 45-12. Austin admits that she reached out to DCG Machine to see if they would be interested in looking at different coolants for their machines. See Record Document 51-8 at 7. Austin states she reached out to F-S Prestress to see if they would test some oil through their state lab in order to get concrete oil state approved. See id. Defendants have also produced a receipt of sale with F-S Prestress listing Austin as Tulstar's sales representative. See Record Document 45-12. Austin admits she talked with an employee at Globe Energy about pricing engine oil, but never gave prices because Tulstar did not sell oil in bulk tanks. See Record Document 51-8 at 7. Austin's Affidavit provides that both

Harris Pottery and Lewis Engineering "never bought any oil from Tulstar." Id. at 7-8. Defendants offer emails between both companies and Austin discussing prices. See Record Document 45-12. Austin admits to contacting (and ultimately selling products) to the joint entity of Longview Asphalt/Madden Contracting. See Record Document 51-8 at 8. Austin does not recall contacting Railway Equipment and states they never bought oil from Tulstar. See id. However, Defendants produced an email price quote from Austin to this customer while at Tulstar. See Record Document 45-12. Austin states that Red River Pump "never bought oil from Tulstar." Record Document 51-8 at 8. Defendants' materials include an email to Red River Pump containing price quotes from Austin in her capacity as a sales representative at Tulstar. See Record Document 45-12. Finally, Austin admits to contacting RedZone to see if they would purchase chemical products, but never quoted Tulstar products because Tulstar did not service bulk tanks in that area. See Record Document 51-8 at 8.

Plaintiff admits contact with many of the customers Industrial Oil/KFM lists. See generally Record Document 51-8. For those she cannot recall contacting or simply states that they did not purchase from Tulstar, Defendants are able to produce documentary evidence showing contact and/or sale. See generally Record Document 45-12. The relevant portion of Section (a) of this covenant provides: "Employee covenants and agrees that he/she will not, directly or indirectly, call upon, communicate with, solicit… or attempt to do so… with any current or former customer, client or prospect of the Company." Record Document 51-2 at ¶5. Austin's admitted communications and Defendants' documentary evidence establish that no genuine dispute of material fact as to whether Austin's contacts breached the Agreement exists, and Defendants are entitled

to judgment as a matter of law. A determination of the appropriate amount of damages stemming from this breach shall also be an issue for the trier of fact.

### D.  Attorney's Fees and Costs

Under Louisiana law, recovery of attorney's fees is prohibited unless explicitly authorized by statute or contract. Sabre Industries, Inc. v. Module X Solutions, LLC, 2019 WL 4794103 at *1 (W.D. La. Sep. 30, 2019) (citing Maloney v. Oak Builders, Inc., 256 La. 386, 390 (1970)). In a breach of contract case, attorney's fees are not recoverable "unless there is a specific provision therefor in the contract." Id.

The explicit terms of the Agreement provide for attorney's fees in the event of breach. The relevant provision states: "Employee acknowledges that the remedy at law for money damages for any breach by him/her of this Agreement will be inadequate, and that the Company shall also be entitled to… reimbursement of expenses, including attorney's fees, incurred in either enforcing this Agreement or pursuing a remedy for Employee's breach of this Agreement…" Record Document 51-2 at ¶7. Having established that Plaintiff has breached the terms of the Agreement, attorney's fees and costs are appropriate. A determination of the amount of these attorney's fees and costs shall be the subject of motion practice at a later date.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike (Record Document 57) is **DENIED**, Defendants' Motion for Summary Judgment (Record Document 45) is **GRANTED**, and Plaintiff's Motion for Summary Judgment (Record Document 52) is **DENIED**. Claims for breach, attorney's fees, and costs are established, with a

determination regarding the amount of these awards to be decided at trial or in motion practice.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 30th day of September, 2020.


S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT